**UNITED STATES of America**

v.

**Margaret Preston ARNOLD, Defendant.**

**No. 1:03 CR 00052–002.**

United States District Court, W.D. Virginia, Abingdon Division.

Dec. 2, 2003.

these avenues proved fruitless, Goodman ultimately offered to claim the gun herself.

S. Randall Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States of America.

Brian M. Ely, Jessee, Read & Ely, P.C., Abingdon, Virginia, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

In this criminal case, I must resolve the defendant's objections to the probation officer's determination of the appropriate sentencing guideline as contained in the presentence investigation report, as well as decide the defendant's motion for downward departure for aberrant behavior. For the reasons stated in this opinion, I will deny the objections and refuse to grant a downward departure.

## I

By a Superseding Indictment returned by the grand jury of this court, the defendant Margaret Preston Arnold was charged, along with George Taffico Pope, with possession with intent to distribute more than five grams of cocaine base within 1000 feet of a truck stop. *See* 21 U.S.C.A. §§ 841(a)(1), 849(b) (West 1999). In addition, Arnold was charged with being an accessory after the fact to the offense of distribution and possession with intent to distribute of cocaine base. *See* 18 U.S.C.A. § 3 (West 2000). Thereafter she pleaded guilty to the charge of being an accessory after the fact pursuant to a written plea agreement. In the plea agreement, she and the government stipulated that section 2X3.1 of the Sentencing Guidelines was applicable to her conduct. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2X3.1 (2002). In return for her plea and adherence to the promises of the plea agreement, the government agreed to move at sentencing for dismissal of the other charge against her. After a hearing pursuant to Federal Rule of Criminal Procedure 11, the defendant's guilty plea was accepted and the case was referred to the probation office for preparation of a presentence investigation report ("PSR").

The defendant filed timely objections to the PSR, as well as a motion for a downward departure, and a sentencing hearing was held on November 19, 2003. The objections and motion were taken under advisement and are now ripe for decision. This opinion constitutes the court's findings of fact and conclusions of law as to the disputed matters.

## II

The evidence shows that on the morning of December 18, 2002, a housekeeper employed at the Comfort Inn Hotel in Abingdon, Virginia, while cleaning a room rented to George Taffico Pope, found what appeared to be drug paraphernalia. The hotel manager called the local police, and allowed the responding officers into Pope's room, where they observed, among other things, a box of plastic baggies, a scale, razor blades, and a black plate containing white powder. Although Pope was not in the room at the time, he soon became aware of the police surveillance and went to the home of the defendant Arnold, a friend to whom he had supplied cocaine in the past. He persuaded her to drive to the hotel alone and retrieve the suspicious items. She entered the hotel room and placed the items in a bag and brought them back to Pope, who was waiting at her home. She did not see any drugs in the room, but she knew that Pope was a drug dealer and that he likely had been distributing drugs.

When she returned to Pope with the items from the hotel room, he asked her if she had found his marijuana, which she had not. He asked her to return and retrieve it, but she refused. He offered her cocaine if she would go back, and she again refused, but finally agreed to drive him in her car to the hotel where Pope went back to his room while she waited in the car. Arnold had been observed by the hotel staff when she first came to the hotel and entered the room, and after Pope and Arnold drove off from the second visit, the police, who had descriptions of the car and its occupants, stopped and arrested them. Pope had approximately two ounces of crack cocaine and a small amount of marijuana on his person. On the floorboard of the passenger side of the car (where Pope had been sitting) the police found a rubber glove containing fourteen small baggies filled with approximately one-half gram of crack each and an additional baggy containing approximately ten grams of powder cocaine. Pope admitted to the police that it had been his intent to make crack

cocaine from the powder cocaine found in the car.

After her arrest, Arnold cooperated with the authorities and was prepared to testify against Pope, but prior to Pope's trial I granted his motion to suppress the evidence against him on the ground that the warrantless entry by police into his hotel room—from which entry the officers acquired their only cause to stop and arrest him—violated his Fourth Amendment rights. *See United States v. Pope*, No. 1:03CR00052, 2003 WL 22213110, at *5 (W.D.Va. Sept.23, 2003). Without such evidence, the government dismissed the charges against Pope. Arnold did not file a motion to suppress, presumably because she had no privacy interest in the hotel room and thus no standing to contest the warrantless search. *See United States v. Perez*, 280 F.3d 318, 337–38 (3d Cir.2002) (holding that defendants lacked standing to challenge search of another's apartment that they visited for a short period and for the exclusive purpose of packaging drugs).

## III

### A

■ The applicable guideline for Arnold's offense is 2X3.1, entitled "Accessory After the Fact." U.S.S.G. § 2X3.1 (2002). It provides for a base offense level six levels lower than the offense level for the underlying offense—meaning the offense as to which the defendant is convicted of being an accessory—but in no event less than four or more than thirty. *Id.* The PSR found Arnold's base offense level to be twenty, based on the quantity of drugs involved in the underlying offense. Arnold first argues that since she had no knowledge of the quantity of drugs possessed by Pope when he was arrested, her base offense level should not be tied to that amount.[1]

While it is true that the commentary to section 2X3.1 provides that the court must also apply any specific offense characteristics from the underlying offense "that were known, or reasonably should have been known, by the defendant," *id.*, drug weight is not a specific offense characteristic of possession with intent to distribute, but instead establishes the base offense level. *See* U.S.S.G. § 2D1.1(a)(3) (2002) (providing that where death or serious injury does not occur, the base offense level for drug trafficking is determined by applying the level specified in the Drug Quantity Table). Accordingly, in an accessory-after-the-fact case, the drug quantity of the underlying offense must be used, "even if the defendant did not know the quantity of the drugs involved." *United States v. Godwin*, 253 F.3d 784, 789 (4th Cir.2001) (citing *United States v. Girardi*, 62 F.3d 943, 945–46 (7th Cir.1995)).

Section 2X3.1 also cross references section 1B1.3 (Relevant Conduct). The commentary to section 1B1.3 provides that "[i]n the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." U.S.S.G. § 1B1.3, cmt. n. 10 (2002). This general

---

1. The PSR recites that Pope possessed 13.29 grams of powered cocaine, 7.2 grams of cocaine base (crack), and 1.82 grams of marijuana, for a total weight equivalent to 380.4 kilograms of marijuana, pursuant to the equivalency table found in the sentencing guidelines. *See* U.S.S.G. § 2D1.1, cmt. n. 10 (2002). This weight translates to an offense level of twenty-six. *See* U.S.S.G. § 2D1.1(c)(7) (2002). Arnold was charged with being an accessory after the fact to possession with intent to distribute cocaine base, but even limiting the drug weight of the underlying offense to that of the cocaine base, the underlying offense level is still twenty-six. *See id.*

provision does not limit the defendant's accountability, as does section 2X3.1, and thus the specific language of the latter provision must control. *See United States v. Girardi,* 62 F.3d at 946.

For these reasons, even accepting that Arnold did not know that Pope possessed the quantity of drugs that he did, her base offense level is still six levels below level twenty-six, or twenty.

## B

■ Arnold also objects to the failure to grant her a mitigating role reduction. Section 2X3.1 provides that "[t]he adjustment from § 3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level." U.S.S.G. § 2X3.1, cmt. n. 2 (2002). Nevertheless, Arnold argues that since this provision does not absolutely prohibit a role adjustment, it ought to be granted to her under the circumstances of this case.

■ Multiple participants in the same criminal conduct may be found to have the same or different levels of culpability depending on the circumstances of the case. The sentencing guidelines take this into account by permitting adjustments for role in the offense. *See* U.S.S.G. § 3B1.2 (2002). This provision directs the court to reduce the defendant's base offense level by four levels if she was a minimal participant in the criminal activity, by two levels if she was a minor participant and by three levels if she falls between these two categories. *See id.* A defendant seeking a mitigation adjustment bears the burden of proving by a preponderance of the evidence that she is entitled to the adjustment. *See United States v. Palinkas,* 938 F.2d 456, 460 (4th Cir.1991), *vacated on other grounds sub nom. Kochekian v. United States,* 503 U.S. 931, 112 S.Ct. 1464, 117 L.Ed.2d 610 (1992).

■ The court should not only compare the defendant's culpability to that of the other participants, but also measure it against the elements of the offense of conviction. *See United States v. Daughtrey,* 874 F.2d 213, 216 (4th Cir.1989). "The critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than the codefendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Palinkas,* 938 F.2d at 460.

■ To convict for being an accessory after the fact, the government must prove that (1) an offense was committed against the United States; (2) the defendant had knowledge of the offense; and (3) the defendant provided assistance to the offender in order to prevent apprehension. *See United States v. Neal,* 36 F.3d 1190, 1211 (1st Cir.1994). Arnold's actions were certainly in the mainstream of conduct necessary for being an accessory after the fact. Indeed, absent the hotel housekeeper's fortuitous earlier entry into the room, Arnold's assistance would likely have been successful in preventing Pope's apprehension. While I do not believe that Arnold knew the full extent of Pope's drug dealing, she knew that he was engaged in that crime and that she was helping him escape detection.

Under these circumstances, I do not find that Arnold is entitled to a role reduction under the guidelines.

## C

■ Finally, Arnold moves for a downward departure from the guideline range on the ground that her conduct constituted aberrant behavior.

One purpose of the federal sentencing guidelines is to create uniformity in sentencing by mandating similar punishment for similar criminal offenders. In an ordi-

nary case, the sentencing court must adhere to the guideline range mandated by the sentencing guidelines. Only rarely may a sentencing court consider additional circumstances and depart from this designated range to impose a sentence that is either shorter or longer than that prescribed by the guidelines. Congress allows a court to use its discretion to depart only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West 2000); *see also Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Commission has identified aberrant behavior as a possible ground for a downward departure under certain limited circumstances. *See* U.S.S.G. § 5K2.20 (2003).[2] Application of this ground for downward departure requires that there be "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from

an otherwise law-abiding life." *Id.* at (b). While I find that Arnold's conduct satisfies subsections (1) and (2) of this provision, it is clear from the evidence that her crime was not a "marked deviation ... from an otherwise law-abiding life." In addition to a series of misdemeanor convictions twenty years ago, including contributing to the delinquency of a minor and petit larceny, she has a long history of illegal drug use. She admits that Pope previously supplied her with crack cocaine and while she professes to be unable to explain why she decided to become an accessory after the fact to his drug trafficking, I believe that it is a fair inference from the evidence that she did so because he was her drug supplier. I recognize that this is the first time Arnold has encountered the criminal justice system since she was a young woman and that she has had stable employment for many years, but particularly because of her continuing illegal drug use, I cannot find that she meets the strict requirements for an aberrant behavior departure.[3]

Moreover, an aberrant behavior departure is available only in "an exceptional case." *Id.* § 5K2.20(a). The only excep-

2. The United States Sentencing Commission, in response to the direction by Congress in the PROTECT Act, Pub.L. No. 108–21, § 401(m), 117 Stat. 650, 675 (2003), issued an emergency amendment to the 2002 Guidelines Manual on October 21, 2003, effective October 27, 2003, which amendment rewrote section 5K2.20. Normally, the sentencing court is required to apply the Guideline Manual in effect as of the date of sentencing, unless such application would violate the Ex Post Facto Clause. *See* U.S.S.G. § 1B1.11(b)(1) (2002). While the amended guideline provision is intended to prevent departures that would have otherwise been permissible before the amendment, *see* PROTECT Act, § 401(m)(2)(A), 117 Stat. at 65, it does not so apply to Arnold, since I find that even under the language of the prior section, a downward departure would not be warranted in her case.

3. The aberrant behavior guideline also prohibits a departure under certain circumstances, but I find that Arnold's case does not fall into any of those prohibited categories. The present offense did not involve serious bodily injury or death; did not involve the discharge or use of a firearm or other dangerous weapon; is not a serious drug trafficking offense as defined; and the defendant does not have more than one criminal history point or a prior felony conviction. *See id.* § 5K2.20(c). The recent amendment also prohibits a departure where the defendant has "any other significant prior criminal behavior." *Id.* While Arnold's past drug use may disqualify her under this ground, I need not decide that question since I believe that the provision's long-standing requirement that the present offense be a marked deviation from a law-abiding life is sufficient to cause me to decline to exercise my discretion to depart.

tional circumstance of this case is that the charges against Arnold's codefendant have been dismissed because of the operation of the exclusionary rule. It obviously gives pause that the guilty principal is freed when his less culpable accessory is punished. However, it is settled in this circuit that absent prosecutorial misconduct, disparity of punishment between or among codefendants is not a ground for departure. *See United States v. Ellis*, 975 F.2d 1061, 1066 (4th Cir.1992).

## IV

Accordingly, for the reasons stated, it is **ORDERED** that the objections to the PSR and the motion for a downward departure by the defendant are denied.